UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| SHEILA BJORN<br>   Plaintiff<br><br>V.<br><br>DEPARTMENT OF SOCIAL SERVICES<br>COMMONWEALTH OF PENNSLYVANIA<br>SCHUYLKILL COUNTY CHILDREN &<br>YOUTH SERVICES DIVISION<br>410 North Centre Street<br>Pottsville, PA 17901-1744<br>Pottsville PA 17901-1744<br>   Defendant<br><br><br>GERARD J. CAMPBELL<br>Executive Director, in His Official and<br>Personal Capacities<br><br><br>HEIDI MORAN, in Her official and<br>Personal Capacities<br><br><br>JOHN WILLIAMS, in His Official and<br>Personal capacities | Docket No. 04-30088 MAP<br><br>VERIFIED CIVIL COMPLAINT<br>AND DEMAND FOR JURY TRIAL<br><br>REQUEST FOR DECLARATORY<br>AND INJUNCTIVE RELIEF,<br>IMMEDIATE SAFE RETURN OF<br>BRYAN AND JOSEPH BJORN,<br>CHILDREN OF THE PLAINTIFF;<br>TAKEN FROM HER WITHOUT<br>CAUSE; RETURN OF<br>IMPROPERLY ASSESSED FINES,<br>ATTORNEY COSTS AND FEES;<br>PROTECTION FROM FUTURE<br>ILLIGAL AND DISCRIMINATORY<br>ACTS BY ANY DEPARTMENT OF<br>THE COMMONWEALTHS OF<br>PENNSLYVANIA AND<br>MASSACHUSETTS, ESPECIALLY<br>AS PERTAINS TO DENIAL OF<br>CONSTITUTIONAL RIGHTS; ISSUE<br>AN IMMEDIATE ORDER TO CEASE<br>ALL ACTIONS TO IMPLEMENT<br>ADOPTION OF BRYAN AND<br>JOSEPH BJORN AND ALLOW<br>ADDITIONAL RELIEF AS THIS<br>COURT DEEMS PROPER AND<br>NECESSARY. |

Sheila A. Bjorn Pro se
20 Falvey Street
West Springfield, MA 01089

JURISDICTION

Jurisdiction of this Honorable Court is invoked pursuant to Title 42 U,S.C.S., sections 1983 & 1985(3); Title 28 U.S.C.S., section 1332 et seq., subsections (a)(1),(2),(3),(4); sections 1343, 1651, 2201, 2202; United States Constitution, Articles 3 et seq., 4 et seq., 6et seq.,; Amendments 1st, 5th, 7th, 8th, 9th, 10th, and 14th.

INTRODUCTION

1   This is a civil action seeking declaratory and injunctive relief, attorney costs and fees, damages to recover the expense of traveling 11 times to and from Pottsville, Pennslyvania, a distance of 1500 miles or more each trip and to compensate for stress and suffering in the amount of $100,000.00; the return of Joseph and Bryan Bjorn improperly taken from Sheila Bjorn; (hereinafter referred to as "Bjorn";as proven further in this case;recision of orders and decisions resulting from multiple presentations of untruths and false facts by the defendants to the Court and such other relief as deemed just and fair by this Honorable Court The true facts concerning the whereabouts of Theodore Clarke, the person stated to be living with Bjorn have been constantly available and obtainable at Wallpole State Prison division of the

Department of Correction of the Commonwealth of Massachusetts which contain information proving the defendants' allegations are not substantiated by available evidence; also proving no proper investigation by the defendants took place prior to presenting facts.

2   As the facts in this case are presented it will become abundantly clear Bjorn's constitutional rights were violated and she is being discriminated against by the defendants. The extreme emotional stress endured by Bjorn would not have occurred if the defendants properly investigated the reports they received; ascertained the truth and provided true facts.. Evidence will show Bjorn tried to mitigate the facts in this case, however, the defendants constantly rebuked her efforts and declined to investigate and ascertain the true facts.. At each Court appearance they presented false facts to further their cause, thus Bjorn had no choice but to institute this civil action.   The evidence and facts in this case borders on Civil Rico-[kidnapping]

3   Further in this complaint Bjorn details the efforts she made after traveling more than 750 miles to Pottsville, Pennslyvania to try to convince the defendants to obtain proper evidence, which evidence would prove their actions were wrong.

.PARTIES

4   Plaintiff, Sheila Bjorn, is the mother of Joseph, Bryan, Sarah, Lindsay, John and Thomas Bjorn and the plaintiff in this case.

Defendant, Department of Social Services, Commonwealth of Pennslyvania and Schuylkill County Children & Youth Services, operated by personnel from the

Commonwealth of Pennslyvania located at 410 North Centre Street, Pottsville, Pennslyvania, 17901-1744 charged with proper care of children taken from families after an investigation proves facts upon which the children should be removed from their family. In this case I will prove the facts upon which Bryan and Joseph Bjorn were taken were never investigated and proven to be true., Thus, because of its actions, based on untrue facts, it is being sued as a defendant in this action..

5. Defendant, Gerard Campbell, is Executive Director of the Schuylkill County Children & Youth Services a Division of the Department of Social Services of the Commonwealth of Pennslyvania and a Defendant in this action being sued in his Official and Personal capacities.

6. Defendant, Heidi Moran, is an employee of the Schuylkill County Children & Youth Services and a principal defendant in this action being sued in her Official and Personal capacities.

7. John Williams is an employee of the Schuylkill County Children & Youth Services Division of the Department of Social Services Department of the Commonwealth of Pennslyvania being sued in his Official and Personal capacities.

## FACTS

8. Sheila Bjorn was living at 615 North 7th Street, Pottsville, PA, together with her sons Bryan and Joseph.

9. Bjorn was employed while living at the above address.

10. Kimberly Clarke and William Perez had recently moved from the home of an aunt due to the aunt's financial problems.. Bjorn agreed to allow them to reside at

4

her apartment. In return they agreed to baby-sit Joseph and Bryan Bjorn during the hours Bjorn worked.

11. On May 24, 2001 the Pottsville Police together with Heidi Moran, an employee of the Schuylkill County Children & Youth Services assumed custody of Joseph and Bryan Bjorn and Kimberly Clarke's child stating concerns about their safety within the home of their mother, deplorable home conditions and because of Bjorn's relationship with Theodore Clarke, a known perpetrator of abuse in Massachusetts; ,and a report of imminent risk of sexual abuse naming Joey and Bryan as victims and Ms. Bjorn, Mr. Theodore Clark, Ms. Kimberly Clark and Mr. William Perez III as perpetrators. It further stated this report was investigated and indicated.

12  It was later established (1) that the home was clean and reasonably neat except for the bedroom occupied by Kimberly Clarke and William Perez which was somewhat in disarray; (2) Theodore Clarke had been convicted for murder in 1979 and sentenced to life in prison, therefore he could not have had a relationship with Bjorn. .Records from the Massachusetts Department of Correction, Wallpole state Prison Division attest to the whereabouts of Theodore Clark during 2001; (3). Bjorn had no police record and was not known to be involved in sexual abuse at any time in the past; and concerns about the safety of Joey and Bryan Bjorn were never brought forth and explained.

13. The "Affidavit states that Mr. Clark, Ms. Clark and Mr. Perez have all stated to this worker that Mr. Clark was residing in the home. As Theodore Clark had been in prison since 1979 the affidavit dictates that Schuylkill County Children & Youth Services has little regard for investigation and true facts.

14. Even though a State, State Agency nor a State Official may be sued in his or her official capacity under Section 1983, [See] Will v. Michigan Department of State Police, 491U.S. 58,70-71(1989); Johnson v. Rodriguez,943F.2d 104, 108-09(1st Cir.1991), a person in his or her personal capacity may be sued under Section 1983. Section 1983 provides in relevant part as follows:

Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . .to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceedings for redress.

15 kimberly Clark and William PerezIII were reunited with their child in August of 2001 even though they were stated to be perpetrators of sexual abuse. Bjorn has been denied her children. She has no record of sexual abuse of any type. The Agency now states she does not travel 750 miles to see her children which children were taken from her because of untrue facts. The Agency does not want to search out the true facts. Their only effort was to have the children adopted by, evidently, a friend,.the person they were placed with. This is very wrong. The Agency, shortly after taking Joseph and Bryan from their mother, insisted she has not been completing courses they have been requiring in order to return her children. An illegal act (assuming custody without cause) cannot make other acts derived from the illegal act legal. This actions of the defendants may possibly constitute Civil Rico, to wit: one person in collusion with anothercommitting illegal acts. In this case it may be kidnapping

6

16  joey and Bryan Bjorn call their mother periodically requesting they be able to be returned to their home. They state they do not want to be adopted something their caseworkers tell them may happen. .

17  Bjorn is proceeding pro se and as such her pleadings should be construed liberally. See Haines v. Kerner, 404 U.S.519, 520-21, 92 S. Ct. 595-96 (1972).

18  All State Agencies, especially those receiving Federal Assistance are guided by Rules which govern and control the implementation of its Programs, and Activities.

19  Investigation and establishing true facts are integral to the duties and mandates of the positions held by the above defendants.

20  The Court could not uphold non-compliance with mandates controlling programs and activities issued by the Commonwealth of Pennslyvania.for its political subdivisions...

21  Intentional non-compliance with the mandates and duties of the positions held by the above defendants are the direct cause of the violations of Bjorn's Federal and State constitutionally guaranteed rights.

22  Kimberly Clark was reunited with her child . If an investigation was undertaken to allow her to be reunited with her child the underlying facts recited in the "Reason for Placement" must have been incorrect.

23  As facts contained in state records prove facts contained in the affidavit as reasons for placement of the Bjorn Children are incorrect the Bjorn children should be retunited with their mother. Caselaw has proven an officer of the law cannot arbitrarily stop an automobile without reason and search for a reason to

arrest the driver. A proven violation of the law must be the reason for stopping the automobile  No proven violation of the law existed at Bjorn's home which would mandate the police and Schuylkill County Children and Youth Services assume custody of the Bjorn children. No programs required by the above Agency can legally prevent Bjorn from having her children returned to her.as the required programs were not the cause of the Agency assuming control of the above children. The affidavit of Dennis Devine proves this fact. See the affidavit of Dennis Devine in Appendix attached hereto.An illegal seizure cannot produce legal evidence.as is the endeavor of the above Agency. The Bjorn children were not abused, neglected nor in fear of sexual abuse.as alleged.

24   There are two different basis upon which a court may exercise personal jurisdiction over a defendant: General jurisdiction and specific jurisdiction.General jurisdiction is a court's authority to hear all claims against a defendant, at the place of the defendant's domicile or the place of service without any showing that a connection exists between the claims and the forum state, so, as the conditions of this case do not comport with general jurisdiction invocation of specific jurisdiction should be warranted. Specific jurisdiction is jurisdiction that stems from the defendant's having certain minimum contacts with the forum state so that the court may hear a case whose issues arise from those minimum contacts. As the label implies, this focus requires weighing the legal sufficiency of a specific set of interactions as a basis for personal jurisdiction . . .The existence of specific personal jurisdiction depends upon the plaintiff's ability to satisfy two cornerstone conditions: first, that the forum in

which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution

25   I find, after examination, that the Court's assertion of personal jurisdiction over the defendants is authorized under the long-arm statute as: (1) each are causing tortuous injury in this commonwealth by an act or omission outside this commonwealth and as required on an ongoing basis do business in this commonwealth and (3) each defendant's duties of employment provide periodic and at times constant business with the Department of Social Services of the Commonwealth of Massachusetts.whether as an Agency or an employee of a department or division of the State due to the Interstate Compact between Pennslyvania and Massachusetts..

26   John Doe and Jane Doe represent personnel presently not properly identified by name who are employed by Agencies involved in this case and Agencies who may be involved in this case.and would need to be identified as defendants as it progresses

29   Application of the Long-Arm Statute.

The Massachusetts long-arm statute provides in relevant part as follows:

A court may exercise personal jurisdiction over a person, who acts directly or by agent, as to the cause of action in law or equity arising from the person's

   (a)   transacting any business in this commonwealth;

   (b)   contracting to supply services or things in this commonwealth;

   (c)   causing tortuous injury by an act or omission in this commonwealth;

9

    (d)  causing tortuous injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth. Mass.Gen.Laws ch223A sec 3 (1996)

30   In this action Bjorn is invoking provision (a),(b), and (d) as a basis for this Court's exercise of personal jurisdiction over these defendants. The facts stated in this affidavit support this conclusion  This conclusion is not based solely on the basis of his/her employment by the Agency but rather because the defendants appear to have a direct personal involvement which will be shown in this affidavit.  The acts and omissions of the individual defendants in both their individual and official capacities have a direct personal involvement which is causally related to Bjorn's injury.  In discovery other persons in addition to the above defendants will become known as persons qualified to become defendants in this action due to their acts and omissions contributing to the injuries detailed in this action and their names and personal involvements will be set forth in a motion to amend this complaint.

31   Whether jurisdiction over these defendants comports with due process.

    In order to determine whether this Court's exercise of personal jurisdiction over a defendant comports with due process, this Court must apply the following three part test.

    First, the claim underlying the litigation must directly arise out of, or relate to,the defendants' forum-state activities.  Second, the defendants forum state contacts must

represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

The "Gestalt factors" are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substansive social policies.Nowak v. Tak How Investments, Ltd. 94 F 3d 708, 717 (First Cir. 1996) (citation to the quoted case omitted).

32   It is a positive fact this litigation arises out of the defendants' forum state activities which include their omissions ( which are activities); certainly the defendants forum state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws.

33   Hundreds of suits against state personnel have been filed each year for decades, thus present state employees cannot deny their involuntary presence before the state's court may never occur but rather could be a foreseeable occurance as it may be in this case.

34   Again, the exercise of jurisdiction must, in light of the Gestalt factors must be reasonable Nowak v. Tak How Investments, Ltd., 94 F.3d 7 708, 712-13 (1st Cir. 1996).(quoting Pritzker v. Yari, 42 F3d 53, 60,61(1st Cir 1994). The first two parts of the test go to the issue of whether the

defendant has minimum contacts with the forum. The third part of the test determines whether the Court's exercise of personal jurisdiction over the defendant "comports with traditional notions of 'fair play and substantial justice'" id at 717 (quoting International Shoe Co. v. Washington, 336 U.S.310, 320(1945)). In order to determine whether a plaintiff's claims "arise out of, or relate to, the defendants forum state activities," at least in a tort context, the court applies a proximate cause standard. Nowak, 94 F3d at 715 (proximate or legal cause clearly distinguishes between foreseeable and unforeseeable risks of harm. Foreseeable is a crucial componenr in the due process inquiry, particularly in evaluating purposeful availment, and we think it also conforms to the relatedness prong. Id.  However, in a business context , the First Circuit has stated that "the absence of proximate cause per se should not always render the exercise of specific jurisdiction inconstitutional".Id.  In the contract/business relationship, the First Circuit has found that where a defendant directly targets residents of a state "and achieves its purpose", it may not necessarly be unreasonable to subject that defendant to forum jurisdiction when the efforts lead to a tortuous result. The (defendants) own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in activities integral to the relationship the defendant (corporation or person) sought to establish , we think the nexus between the contacts and the cause of action is sufficiently strong to survive the

due process inquiry at least at the relationship stage".Id. The First Circuit describes this standard for determining whether the relationship test has been met as a combination of the "but for" and proximate cause standards.

35  Therefore, under the First Circuit's reasoning in Nowak, this Court should not need to apply a combination of the "but for" and proximate cause standards even though the defendants would have no burden of appearing as the appearances would be during working hours and state transportation could be made available to them at no cost to them because the forum state's interest in adjudicating the dispute is indisputable and necessary, especially as employees of it as their names become known are made defendants; the plaintiff's interest in obtaining convenient and effective relief is prevelant both in the context of this action and the fact she initiated this action to obtain relief in a manner least expensive to all concerned; and the fact she sought relief from the defendants prior to initiating this civil action to avoid any inconvenience to the defendants; the fact the judicial system's interest in obtaining the most effective resolution of the controversy is indisputable.especially where the guaranteed rights of its citizens are concerned and the subject of controversy. The guaranteed rights contained in the 14th Amendment to the Constitution allow a citizen to have possession of and enjoy their property. The Courts must uphold this right. The reason for assuming control of the Bjorn children has been proven false through state records.

36    Gerard J. Campbell and possibly others are responsible under a Section 1983 on a respondent superior theory. An individual acting in a supervisory capacity cannot be normally be held vicariously liable under Section 1983 on a respondent superior theory. However, such individual may be liable "on the basis of his own acts or omissions." Maldonado-Dennis v. Castillo-Rodriquez, No. 93-2012, 1994 WL 162113, at 3 (1st Cir. May 6, 1994). To prevail Bjorn must prove the defendants acted either intentionally or demonstrated a deliberate indifference to the deprivation of her Constitutional rights. See Manarite v. City of Springfield, 957 F2d 953, 955 (1st Cir. 1992). Supervisor's may be liable under Section 1983 for formulating policies that result in the "challenged occurrence" and, therefore, "even if the supervisor lacks actual knowledge of censurable conduct, he may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness; and if he had the power and authority to alleviate it." Maldonado-Dennis, 1994 WL 162113 at 3. Additionally, the complaining party must prove a casual connection between the challenged occurrence and the supervisor's conduct. In Maldonado- Dennis, the First Circuit stated that the complaining party must:

> [A]ffirmatively connect the supervisor's conduct to the subordinate's violative act or omission ... for example, a sufficient casual [sic]nexus may be

found if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct

A casual link may also be forged if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations. When the supervisor is on notice and fails to take corrective action, say by better training or closer oversight, liability may attach.

. . .isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference . . .proof of mere negligence, without more is inadequate to ground supervisory liability if it is causally connected to the actions that work the direct constitutional injury. Id. At 4 (citations omitted)

37. In this case Bjorn has notified everyone in Schuylkill County Children & Youth Services that the reason stated for assuming custody of her children was incorrect and gave information as to the Massachusetts prison where Theodore Clarke had resided at since 1979 and Mr. Campbell and his subordinates refused to investigate the true facts even though it would take less than one hour using the telephone.

38. Personal jurisdiction over John Doe and Jane Doe is warranted as the evidence in this case is overwhelming in favor of personal jurisdiction over them.

39. The injuries to Bjorn recited in this complaint cause injury to her and to her business as she is in the house cleaning business and her children assist her for financial reasons.